**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| KEVIN JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-07-0178 |
| | § | |
| FRANCIS DRILLING FLUIDS, LTD., | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This insurance coverage dispute arises from a Comprehensive General Liability

("CGL") Policy that Liberty Mutual issued to the named insured, Francis Drilling Fluids,

Ltd. One of Francis Drilling's employees, Kevin Jones, sued various defendants in this

court, alleging personal injury from exposure to sodium hydrochloride liquid. Two

additional insureds under the CGL Policy, TODCO d/b/a TODCO Inc., the Offshore Drilling

Company d/b/a TODCO ("TODCO") and Applied Drilling Technologies, Inc. ("ADTI"),

filed a third-party complaint seeking a defense and indemnification against Jones's claims.

The insurer, Liberty Mutual, has moved for summary judgment dismissing the third-party

complaint. The basis for the insurer's summary judgment motion is the pollution exclusion

in the CGL Policy. Whether Texas or Louisiana law applies is important; under Texas law,

pollution exclusions are often the basis for summary judgments, while under Louisiana law,

pollution exclusions are viewed as either ambiguous or raising fact issues that make summary

judgment difficult to grant.  One issue in determining whether Texas or Louisiana law governs is the application of Article 21.42 of the Texas Insurance Code.  That in turn requires analyzing whether the proceeds of the CGL Policy at issue are payable to a Texas "citizen" or "inhabitant" and whether the Policy was issued in the course of the insurer's business in Texas.

Based on the pleadings, the motion, response, reply, and surresponses and surreplies, this court answers these questions, concluding that the summary judgment motion must be denied.  The reasons are set out below.

## I.    Background

The plaintiff, Kevin Jones, sued multiple defendants, alleging personal injuries suffered in January 2007 while employed by Francis Drilling and working on RIG 46.  This rig was allegedly owned, operated, and/or managed by TODCO.  Jones alleged that TODCO was working for ADTI.  Jones sued in admiralty jurisdiction, asserting a Jones Act claim. Jones alleged that he sustained serious injuries when he was exposed to massive amounts of "sodium hydrochloride." Jones alleged that defendants Baker Hughes, Inc. and/or BJ Services "with TODCO's knowledge, dumped large amounts of sodium hydrochloride liquid in Plaintiff's work area and never told him of the hazard."  Although Jones's complaint did not allege the location of RIG 46 at the time of his alleged accident, he testified in his deposition that the rig was located in a marsh approximately 30 to 40 minutes by boat up the Intercoastal Canal from Morgan City, Louisiana.  (Docket Entry No. 81, Ex. A).

2

Jones testified that he is a Louisiana resident.  Francis Drilling is a Louisiana corporation having its principal place of business in Acadia Parish, Louisiana.  TODCO is a Delaware corporation with its principal place of business in Texas.  ADTI is a Texas corporation with its principal place of business in Texas.  Liberty Mutual is a Massachusetts corporation with its principal place of business in Boston; it also does business in Texas.

In the third-party complaint filed against Liberty Mutual, TODCO and ADTI seek defense and indemnity for the claims Jones filed against them.  TODCO and ADTI allege that they are additional insureds under the CGL Policy that Liberty Mutual issued to Francis Drilling.  Under a Master Services Agreement between Francis Drilling and ADTI, Francis Drilling agreed to purchase and maintain insurance coverage and to name ADTI and its contractors as additional insureds under its CGL Policy.  The CGL Policy's Blanket Additional Insured Endorsement defines additional insureds as "any person or organization for whom [Francis Drilling] ha[s] agreed in writing to provide liability insurance."  (Docket Entry No. 78, Ex. C, Endorsement 22).

## II.    The CGL Policy

The Declarations Page of the CGL Policy states that the Named Insured is "Francis Drilling Fluids, Ltd.," located at P.O. Box 1694, Crowley, Louisiana.  The CGL Policy contains a "Total Pollution Exclusion," which provides that the Policy does not apply to:

> f.    Pollution
>
>> (1)    "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge,

3

dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2)     Any loss, cost or expense arising out of any:

(a)     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b)     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

(Docket Entry No. 78, Ex. C, Endorsement No. 9).

The CGL Policy defines "pollutants" as follows:

15.     "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

(*Id.*, Ex. C, p. 14 § 5).

The CGL Policy does not contain a specific choice-of-law provision, but does contain four endorsements tailored to Louisiana law.  These endorsements replace portions of Liberty Mutual's standard contract language regarding legal action, the insuring agreement, transfer of rights of recovery against others, and cancellation and nonrenewal.  (*Id.*, Ex. C, Endorsements 25-28).

4

### III.   The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "'An issue is material if its resolution could affect the outcome of the action.'"  *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)).  "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.

"[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a 'scintilla' of evidence.'" *Little*, 37 F.3d at 1075 (internal citations omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

## IV. The Choice-of-Law Issue

Although a federal court customarily applies the choice-of-law rules of the forum in which it is located, *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496 (1941), in admiralty cases, general federal maritime choice-of-law rules apply. *Albany Ins. Co. v. Anh Thi Kieu,* 927 F.2d 882, 890-91 (5th Cir. 1991). Under admiralty law, if the parties do not select the law of the state to govern their contractual rights and duties, to determine the appropriate state law to apply, the court uses general maritime choice-of-law rules. These are substantially similar to modern choice-of-law rules in using a most-significant-relationships test. *Id.* at 891 (applying RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1980)); *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 880 n.3 (5th Cir. 1987).

Liberty Mutual asserts that Texas choice-of-law rules should apply because the jurisdictional premise for the third-party complaint is diversity, not maritime law, and a federal court sitting in diversity should follow the choice-of-law principles of the state in

which it sits.  *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996).  Liberty Mutual also argues that Texas choice-of-law rules would require the application of Article 24.12 of the Texas Insurance Code, which in turn would require that Texas law govern this dispute.

As explained below, Article 24.12 would not apply in this case even if Texas choice-of-law rules did apply.  Because Article 24.12 does not apply, both the maritime and Texas choice-of-law rules would require this court to employ the same "most significant relationship test" and would dictate the same result.

### A.    Article 24.12 of the Texas Insurance Code Does Not Apply

"In Texas, when, as here, a contract does not contain an express choice-of-law provision, a court must determine whether a relevant statute directs the court to apply the laws of a particular state."  *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.,* 145 S.W.3d 337, 340 (Tex. App. 2004, pet. denied).  Liberty Mutual asserts that if Texas choice-of-law rules were applied, Article 21.42 of the Texas Insurance Code would direct this court to apply Texas law.  Under Article 21.42:

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy of contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes demand) should be without this State, or at home office of the company or corporation issuing the same.

TEX. INS. CODE art. 21.42 (Vernon 2005).

Texas state and federal courts have adopted a narrow interpretation of this provision. Article 21.42 "applies to an insurance contract when: (1) the insurance proceeds are payable to a Texas citizen or inhabitant; (2) the policy is issued by an insurer doing business in Texas; and (3) the policy is issued in the course of the insurer's business in Texas." *Reddy Ice,* 145 S.W.3d at 341. "[A]rticle 21.42 [is] designed only to assure that Texas law will apply to contracts made between Texas citizens and insurance companies doing business in Texas, when and only when those contracts are made in the course of the company's Texas business." *Howell v. American Live Stock Ins. Co.*, 483 F.2d 1354, 1539 (5th Cir.1973); *see also SnyderGeneral Corp. v. Great Am. Ins. Co.*, 928 F. Supp. 674, 678 n.2 (N.D. Tex. 1996).

In *Reddy Ice*, the court held that Article 21.42 does not apply to a corporation that has its principal place of business in Texas but is incorporated in a different state. *See id.* at 344 ("Article 21.42 restricts a corporation's inhabitancy to its place of incorporation."); *see also Kimberly-Clark Corp. v. Cont'l Cas. Co.*, No. 3:05-cv-0475, 2005 WL 2679698, at *7 (N.D. Tex. Oct. 19, 2005) ("Article 24.42 does not apply here because [the insured], a Delaware corporation, is not an inhabitant of Texas for purposes of this provision, despite its primary place of business being in Texas.").[1]  In Texas, "a corporation is [considered] an *inhabitant* of the state under whose law it is incorporated and . . . it has a *residence* wherever it conducts

---

[1] Other courts applying Article 21.42 have concluded that it does not apply to corporations incorporated in a different state, with a principal place of business in another state, that do business in Texas. *See Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, 1:07-cv-699, 2008 WL 686156, at *3 (E.D. Tex. Mar. 6, 2008) (Article 21.42 did not apply to an insured that was not incorporated in Texas); *Coachmen Indus., Inc. v. Willis of Ill., Inc.*, No. H-06-0892, 2008 WL 1912861, at *3 (S.D. Tex. 2008) (same).

its ordinary business. Therefore, Texas law defines an 'inhabitant' much as a 'citizen'" *TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 417 (E.D. Tex.1998) (internal citations omitted) (quoting *Pittsburg Water Heater Co. of Tex. v. Sullivan*, 115 Tex. 417, 282 S.W. 576, 579 (Tex. 1926)). Liberty Mutual is incorporated in Louisiana. TODCO is incorporated in Delaware. Because the named insured and one of the alleged additional insureds are not "inhabitants" of Texas, the first requirement of Article 21.42 is not met.

Article 21.42 is also inapplicable if the insurance policy was not issued in the course of the insurer's business in Texas. In *Howell*, the Fifth Circuit held that Article 21.42 applies to insurance contracts "*when and only when* those contracts are made in the course of the [insurance] company's Texas business." 483 F.2d at 1359 (emphasis in original) (citing *Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex. 1968)). The policy at issue in *Howell* was created and executed in New Mexico, the insured was a Texas resident, and the defendant, an out-of-state insurance company, did business in Texas. The *Howell* court refused to apply Article 21.42 because the policy was issued in the insurer's course of New Mexico business and not in the course of its Texas business. The court looked to where the contract was made and executed in deciding whether the contract was issued in the course of the insurer's Texas business. *Id*. at 1360-61; *see also In re VarTec Telecom, Inc.*, No. 07-3056, 2007 WL 2142499, at **3-4 (Bankr. N.D. Tex. July 23, 2007). There is no evidence in the record that Francis Drilling's CGL Policy was made, executed, or issued in the course of Liberty Mutual's business in Texas.

9

Article 21.42 does not apply when any of its three requirements are not met.  *See Reddy Ice*, 145 S.W.3d at 341-44.  In this case, the insured who bargained for the insurance contract, Liberty Mutual, is incorporated in Louisiana and is not an inhabitant of Texas.  An additional insured, TODCO, is incorporated in Delaware and is also not an inhabitant of Texas.  There is also no evidence that the CGL Policy was issued in the course of Liberty Mutual's business in Texas.  These facts defeat the first and third requirements.  Article 21.42 does not apply in this case.

### B.    The Most-Significant-Relationship Test

When no statutory directive governs in a contract dispute, Texas courts apply the "most significant relationship" test set out in RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6 and 188.  *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex. 1984) ("[I]n all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue.").  Maritime law requires a substantially similar test.  *See Albany Ins. Co.*, 927 F.2d at 891 (applying the RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 188 (1980)).[2]

---

[2] *Albany Ins. Co.* characterized the RESTATEMENT as dictating essentially a two-step process.  First, to determine which states have sufficient contact with the policy and the parties, the court looks to the state where the policy was formed or where it was issued and delivered.  *Id.*; *see also Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 894 (5th Cir. 1994), *overruled on other grounds by Bienvenu v. Texaco, Inc.*, 164 F.3d 901, 909 (5th Cir. 1999); *Transco Exploration Co. v. Pacific Employers Ins. Co.*, 869 F.2d 862, 863 (5th Cir. 1989); *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195, 198 (5th Cir. 1985).  After the court has identified the states that have sufficient contact with the policy, the court then determines which state has the greatest interest in resolving the issues surrounding the policy.  *Albany Ins. Co.*, 927 F.2d at 891; *Truehart v. Blandon*, 884 F.2d 223, 226 (5th Cir. 1989).

Under the RESTATEMENT, the factors the court must consider include (1) the needs of the interstate and international systems, (2) the relevant policies of the forum, (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability, and uniformity of result, and (7) ease in the determination and application of the law to be applied. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971).  The types of contacts to be considered in applying these principles include (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the contract's subject matter, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* § 188(2).

In this case, the first two types of contacts – the place of contracting and negotiation – point to Louisiana.  The CGL Policy was issued in Louisiana to Francis Drilling, a Louisiana corporation with its principal place of business in Louisiana.  The Policy provides that Francis Drilling is "responsible for the payment of all premiums," and "[w]ill be the payee for any return premiums [Liberty Mutual] pay[s]." (Docket Entry No. 78, Ex. C, Common Policy Conditions at 2).

The fourth type of contact – the location of the subject matter – also points to Louisiana.  The weight that the fourth contact should be accorded depends on the type of the insured risk.  "When the contract . . . affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of employment, the location of . . . the risk is

significant." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2), cmt. (e).  Comment

(a) to section 193 of the RESTATEMENT (SECOND) OF CONFLICTS explains:

> The location of the insured risk will be given greater weight than
> any other single contact in determining the state of the
> applicable law provided that the risk can be located, at least
> principally, in a single state.  Situations where this cannot be
> done . . . include . . . where the policy covers a group of risks
> that are scattered throughout two or more states.

Texas law adopts this reasoning.  *See Reddy Ice*, 145 S.W.3d at 345.  The location of the

insured risk is particularly probative where the insurance contract appears to be tailored to

the laws of the particular state where the risk is situated.  Comment (a) to section 187 of the

RESTATEMENT (SECOND) OF CONFLICTS provides:

> [E]ven when the contract does not refer to any state, the forum
> may nevertheless be able to conclude from its provisions that the
> parties did wish to have the law of a particular state applied.  So
> the fact that the contract contains legal expressions, or makes
> reference to legal doctrines, that are peculiar to the local law of
> a particular state may provide persuasive evidence that the
> parties wished to have this law applied.

*See also Cudd Pressure Control, Inc. v. Sonat Exploration Co.*, 202 S.W.3d 901, 909-10

(Tex. App.–Texarkana 2006, pet. denied) (concluding that Louisiana law applied in contract

without explicit choice-of-law provision because the contract accounted for "unique features

of the Louisiana law").

    In the present case, the record shows that the insured, Francis Drilling, purchased

insurance for its business in Louisiana.  The CGL Policy includes several endorsements

tailoring the policy to Louisiana law.  (Docket Entry No. 78, Ex. C, Endorsements 25-28).

The parties have presented no basis for concluding that the CGL Policy applied to risks outside Louisiana.  The fourth type of contact weighs in favor of applying Louisiana law.

The fifth type of contact – the domicile, residence, nationality, place of incorporation, and place of business of the parties – points to Texas.  Liberty Mutual is a Massachusetts corporation doing business in Texas; TODCO is a Delaware corporation with its principal place of business in Texas; and ADTI is a Texas corporation with its principal place of business in Houston.  If this were an insurance-coverage dispute arising from a contract for nationwide or multistate liability coverage, this factor would carry weight in determining which law applies.[3]  But in this case, the CGL Policy was issued to a Louisiana company that had its only place of business in Louisiana and the Policy was issued to cover risks in Louisiana.  The accident occurred in Louisiana, to a Louisiana resident.  These contacts weigh in favor of applying Louisiana law.

---

[3] Comment (f) to section 193 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS provides:

*Multiple risk policies.*  A special problem is presented by multiple risk policies which insure against risks located in several states.  A single policy may, for example, insure dwelling houses located in states X, Y, and Z.  These states may require that any fire insurance policy on buildings situated within their territory shall be in a special statutory form.  If so, the single policy will usually incorporate the special statutory forms of the several states involved.  Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk.  So, if the house located in state X were damaged by fire, it is thought that the court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance to the local law of X.  In any event, that part of the policy which incorporates the special statutory form of a state would be construed in accordance with the rules of construction of that state.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193, cmt. f (emphasis added).  This provision does not apply here because there is no showing that the risks insured against are located in several states.

Liberty Mutual argues that the court should give more weight to the predominantly Texas contacts of the two alleged additional insureds and less weight to the contacts of the named insured and the circumstances of the underlying accident.  Liberty Mutual cites *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996), for the proposition that "when the issues of a case require the construction and application of insurance policies, . . . the relevant inquiry is what contacts the state has with the insurance dispute, and not with an underlying lawsuit."[4]  But the contacts with Texas in this case are far fewer than those in *St. Paul Mercury*.  In that case, the court found that Texas law applied to an insurance dispute between primary and excess carriers, despite the fact that the underlying claim involved a Louisiana resident injured in Louisiana while working for a Louisiana employer.  The named insured had a place of business in Texas and three of the four policies were issued and delivered to the named insured in Texas.  *Id*.  There were also more Texas contacts in *Reddy Ice*, 145 S.W.3d at 346, another case Liberty Mutual cites.  In *Reddy Ice*, the policies were issued from the insurer's Texas office or in the course of the insurer's Texas business to the named insureds at their Texas places of business, the

---

[4]  Liberty Mutual also points out that the Master Service Agreement between Francis Drilling and TODCO and ADSI contains a choice-of-law provision specifying that their relationship should be governed by maritime and Texas law:

> All rights, obligations and liabilities of the parties . . . shall be exclusively determined, interpreted, litigated and construed in accordance with United States General Maritime Law, provided, however, that if there is no applicable law, then the laws of the State of Texas, excluding any conflicts of law or choice of law rules that would apply the laws of another jurisdiction.

(Docket Entry No. 58, Ex. A ¶ 18).  The contractual relationships established in the Master Service Agreement are not at issue in this motion.  The law governing those relationships does not determine the law that applies to interpreting the pollution exclusion clause in the CGL Policy.

14

premiums were paid in Texas, and notices of cancellation and of occurrences triggering coverage were to be submitted in Texas.  The court concluded:

> Texas has a strong interest in the outcome of an insurance coverage dispute that involves a Texas insurer, an insurer doing business in Texas, and their contractual relationship with their insured, a company principally operating in Texas.  Louisiana has little interest in whether any settlements or judgments are paid by Reddy Ice, or instead, by its insurers, or in regulating the scope of a pollution exclusion clause contained in an insurance policy issued in Texas.

*Id.*

In the present case, by contrast, there is only one Texas contact, the location of the additional insureds.  The CGL Policy was issued to a Louisiana company, by a Massachusetts insurer.  Although the insurer does business in Texas, it did not issue this Policy in the course of its Texas business.  Louisiana has a strong interest in regulating the scope of a pollution exclusion clause contained in an insurance policy issued in Louisiana, to a Louisiana insured, covering Louisiana risks.  The fact that the additional insureds who are asserting coverage have contacts to Texas does not support the application of Texas law.

The most-significant-relationship test weighs strongly in favor of Louisiana law.  This court concludes that Louisiana law applies here.

## III.    Applying Louisiana Law

In *Doerr v. Mobil Oil Corporation*, 774 So.2d 119 (La. 2000), the Louisiana Supreme Court clarified Louisiana law on the proper interpretation of a Total Pollution Exclusion.

The pollution exclusion before the *Doerr* court was very similar to that found in the CGL

Policy issued to Francis Drilling.  The provision stated:

> This insurance does not apply to:
>
> (1)     "Bodily injury", "property damage", "personal injury" or "advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
>
> (2)     Any loss, cost or expense arising out of any:
>
> >   (a)     Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
> >
> >   (b)     Claim or suit by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.
> >
> >   Pollutants means solid liquids, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed.

*Id*. at 122.

In *Doerr*, hydrocarbons were accidentally discharged into the Mississippi River by

Mobil Oil.  The hydrocarbons traveled to the St. Bernard Parish water system and allegedly

caused injury to users of the system.  St. Bernard Parish and its insurer, Genesis Insurance

Company, were sued.  Genesis moved for summary judgment on the basis of the total

pollution exclusion.  The trial court denied the motion, the Louisiana Fourth Court of

Appeals reversed the trial court, and the Louisiana Supreme Court reversed the appellate

court.  *Id*. at 123.  The Louisiana Supreme Court stated in part as follows:

> In this case, the total pollution exclusion purportedly excludes
> coverage for any injury that "would not have occurred in whole
> or part but for the actual, alleged or threatened discharge,
> dispersal, seepage, migration, release or escape" of any "solid,
> liquid, gaseous, or thermal irritant or contaminant" at any time.
> As written, the exclusion can be read to exclude coverage for
> anything from the release of chlorine gases by a conglomerate
> chemical plant to the release of carbon monoxide from a small
> business owner's delivery truck.  It could be read to exclude
> injuries resulting from a slip and fall on an oil-slicked beach to
> a slip and fall on spilled gasoline at a corner service station. . . .
>
> Without some limiting principle, the pollution exclusion clause
> would . . . lead to some absurd results.  To take but two simple
> examples, reading the clause broadly would bar coverage for
> bodily injuries suffered by one who slips and falls on the spilled
> contents of a bottle of Drano, and for bodily injury caused by an
> allergic reaction to chlorine in a public pool.  Although Drano
> and chlorine are both irritants or contaminants that cause, under
> certain conditions, bodily injury or property damage, one would
> not ordinarily characterize these events as pollution.

*Id.* at 127 (quoting *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d

1037, 1043 (7th Cir. 1992)).

The Louisiana Supreme Court instructed that whether a total pollution exclusion is

applicable in any given case turns on the following considerations:

> (1)     Whether the insured is a "polluter" within the meaning of
>          the exclusion;
>
> (2)     Whether the injury-causing substance is a "pollutant"
>          within the meaning of the exclusion; and

17

> (3)     Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.

*Id.* at 135.  The court emphasized fact-intensive nature of this inquiry:

> First, the determination of whether an insured is a "polluter" is a fact-based conclusion that should encompass consideration of a wide variety of factors.  In making this determination, the trier of fact should consider the nature of the insured's business, whether the type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business, who the insurer typically insures, any other claims made under the policy, and any other factor the trier of fact deems relevant to this conclusion . . . .

> Second, the determination of whether the injury-causing substance is a "pollutant" is also a fact-based conclusion that should encompass a wide variety of factors.  As pointed out above, there are a variety of substances that could fall within the broad definition of irritants and contaminants as provided in this policy.  For example, under pollution exclusions similar to the one at issue here, courts have found "pollutant" to include everything from asbestos, carbon monoxide, gasoline, lead paint, and some pesticides; on the other hand, some courts have found that "pollutants" do not include muriatic acid, styrene resins, and other forms of pesticide.  Consequently, when making this determination, the trier of fact should consider the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion.

> Finally, the determination of whether there was "discharge, dispersal, seepage, migration, release or escape" is likewise a fact-based conclusion that must result after a consideration of all

18

> relevant circumstances. Specifically, the trier of fact should consider whether the pollutant was intentionally or negligently discharged, the amount of the injury-causing substance discharged, whether the actions of the alleged polluter were active or passive, and any other factor the trier of fact deems relevant. These factual conclusions should be made to assist a court in determining whether the total pollution exclusion in any particular case will exclude coverage for a claim.

*Id.* at 136 (internal citations omitted).

Under *Doerr*, summary judgment based on a pollution exclusion is much more difficult to obtain than under Texas law. As the Court of Appeals for the Fourteenth District of Texas noted in *Reddy Ice*, "[t]he Louisiana Supreme Court has held that a total pollution exclusion clause is ambiguous and therefore presents an issue of fact regarding its applicability to a given occurrence." 145 S.W.3d at 340 n.3.

In this case, there is no evidence as to whether Francis Drilling, TODCO, or ADTI are "polluters" within the meaning of the exclusion. There is no evidence as to whether the substance "sodium hydrochloride" is a pollutant, how it is typically used, or whether it was being used for its intended purpose when the accident occurred which, under the *Doerr* court's analysis, could indicate that the substance was not a pollutant. Finally, there is no evidence as to whether the alleged "dump" of sodium chloride in the work area was a "discharge, dispersal, seepage, migration, release or escape" of a "toxic substance."

Courts applying *Doerr* do not grant summary judgment motions based on pollution exclusions without a more extensive factual basis than is present here. In *Barry Concrete, Inc. v. Martin Marietta Materials, Inc.*, 531 F. Supp. 2d 766 (M.D. La. 2008), for example,

the plaintiff purchased aggregate for use in concrete, but the concrete made from that aggregate would not properly cure or harden because of sugar contamination.  The insurer for the trucker that transported the aggregate denied coverage on numerous grounds, including a pollution exclusion.  *Id*. at 768.  The court refused to grant summary judgment for the insurer because there remained genuine issues of material fact as to whether the trucker was a "polluter," whether sugar was a "pollutant," and whether the sugar was "discharged, dispersed, seeped, migrated, released or escaped" within the meaning of the policy exclusion.  *Id*. at 772.  In *North American Specialty Insurance Co. v. Iberville Coatings, Inc.*, No. 99-859-A, 2002 WL 3443044, at *6 (M.D. La. Oct. 8, 2002), the court granted the insured's motion for partial summary judgment, finding that the total pollution exclusion in the policy did not exclude coverage for damages resulting from the release of mustard gas at a plant where the insured was working.  Although the insured was a painting subcontractor, there was no indication, allegation, or evidence that the painting business presented a risk of pollution, that the insured maintained a separate policy for pollution liability, that the insured should have known that a separate policy covering pollution damages would be necessary, or that the discharge had been caused by the insured.  *Id*.  In *Gaylord Container Corp. v. CNA Insurance Cos.*, 807 So.2d 864, 872 (La. App. 2001), the court concluded that the policy did not preclude coverage for damages arising from an accidental explosion at the insured's chemical plant causing the release of admittedly hazardous substances.  The court reasoned:

> The exclusion was "not meant to exclude coverage for routine accidents which incidentally involved a chemical agent. . . ." Guided by the *Doerr* decision, we hold that when a fortuitous event such as an explosion occurs, and that event incidentally involves a chemical agent, the absolute pollution exclusion operates to exclude coverage for environmental damage only.

*Id*. (internal citations omitted).   Under either Texas or maritime choice-of-law rules, Louisiana law applies.  Under Louisiana law, fact issues as to the application of the pollution exclusion in the CGL Policy precludes Liberty Mutual's motion for summary judgment.

## IV.    Conclusion

The motion for summary judgment is denied.

SIGNED on December 9, 2008, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge